# Order

**Michigan Supreme Court**
**Lansing, Michigan**

October 7, 2011

142682

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

BETH C. MATTER,
        Plaintiff-Appellant,

v

RICHARD C. MATTER,
        Defendant-Appellee.

SC:  142682
COA: 293421
Oakland CC Family
Division: 2005-708339-DO

_____/

On order of the Court, the application for leave to appeal the January 20, 2011 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARILYN KELLY, J. (*dissenting*).

I dissent from the Court's order denying plaintiff's application for leave to appeal and would reverse the Court of Appeals decision. I agree with the dissenting opinion of that court which would have affirmed the circuit court decision. The circuit court held an extensive evidentiary hearing and determined that defendant's gross income for the purpose of calculating his spousal support includes certain amounts he treated as investment or passive income. It granted plaintiff's motion for an increase in spousal support, but the Court of Appeals reversed that decision.

The underlying facts are as follows. Soon after the parties' divorce, defendant left his employment as an oncologist at a large Michigan hospital and relocated to Kentucky where he took employment with United Surgical Associates PSC (USA). He soon chose to become a shareholder of USA. This required him to purchase shares in USA's captive medical equipment affiliate, Radiation Oncology Associates, PLLC (ROA). His employment included work for another USA affiliate, United Radiation Oncology (URO), which operates cancer treatment centers and uses ROA's medical equipment to treat USA's cancer patients.

Under the terms of the parties' judgment of divorce, plaintiff's spousal support is a percentage of defendant's gross earnings. The earnings comprised income from defendant's employer and from Premier Radiation Oncology Services P.C. The latter was a captive affiliate of defendant's employer, and the income it generated was "passive interest or investment income."

While in Michigan, defendant's average annual income was $390,000. In 2006-2007, his first year in Kentucky, defendant asserted that the income subject to his spousal support obligation was $374,805. But his W-2 reported income of $466,174. Defendant claimed that the difference between his W-2 income and his salary came from returns on his investments in USA and ROA, a sum of roughly $90,000. And, he claimed that the amount of spousal support he should pay must be based solely on his salary. He viewed it irrelevant that the base used in Michigan included income from his investment in a captive affiliate corporation of his employer there.

The circuit court disagreed and ruled that his divorce settlement contemplated that the income reported on his W-2 was defendant's income for the purposes of calculating his spousal support obligation. The court pointed out, in addition, that the language of the Michigan Child Support Formula supports its position. The Formula would interpret defendant's income as his "earnings generated from a business, partnership, contract, self-employment, or other similar arrangement or from rentals," and additionally include ". . . interest, [and] dividends . . . to the extent that they represent income or may be used to generate regular income." MCSF 2.01(C)(2) and (5).

The trial court reasoned that defendant realized the return on his investment in ROA and URO solely as a result of his employment. Consequently, that income was part of his gross earnings from his employment. Additionally, the court found that defendant did not act in good faith in leaving his employment in Michigan. His move to Kentucky stripped plaintiff of her interest in his supplemental employee retirement plan.

However, the Court of Appeals majority found the divorce judgment unambiguous and held that the plain language of the parties' agreement excluded consideration of defendant's investment income from USA and ROA. It also held that defendant did not breach the implied covenant of good faith and fair dealing, because he did not violate any of the terms of the parties' settlement agreement.

The Court of Appeals majority failed to grasp the equitable nature of spousal support. It also failed to recognize the ambiguity in the settlement agreement and incorrectly applied a de novo standard of review. I agree with the Court of Appeals dissent that this case should have been reviewed for clear error. Had that standard been applied, the judgment would not have been found to be clearly erroneous, for the reasons stated in both the Court of Appeals dissenting opinion and the circuit court opinion.

The circuit court determined that, for purposes of the judgment, the definition of "investment income" was not the same as the definition used in the Internal Revenue Code. The proper analysis must take its guidance from the Child Support Formula. Using that guide, it is apparent that defendant's income included the gains from his employment and labor while working with URO. The income accumulated from ROA and URO was not passive investment income, especially given the relationship between those captive affiliates. Defendant's income increased as the number of patients he treated at URO increased the number of patients using ROA's equipment.

Additionally, the machinations that defendant employed to avoid the classification of this income as gross income beg for the application of equitable principles by the circuit court. Plaintiff claimed in the trial court, and defendant has yet to rebut, that defendant represented during the divorce proceedings that he would continue to work at the Michigan hospital. Plaintiff was unaware when the settlement agreement was written that defendant would terminate that employment just two months after the judgment of divorce was entered. Defendant led her to believe that her rights to defendant's unvested supplemental employee retirement plan with the Michigan hospital were secure.

The application of equitable principles, always appropriate in domestic relations matters, requires a different result under the facts of this case than the Court of Appeals reached. I would reverse the Court of Appeals decision.

ZAHRA, J., did not participate because he was on the Court of Appeals panel.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 7, 2011

_____
Clerk

p1004